IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICKY G. AARON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 05-1059-T/An |
| SANDRA CAGLE, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ASSESSING FILING FEE
ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Plaintiff Ricky G. Aaron, prison registration number 349503, an inmate at the Northwest Correctional Complex ("NWCX"), filed this complaint under 42 U.S.C. § 1983. The Clerk of Court shall record the defendants as Sandra Cagle, Joshua Ross, Paula Thomas, Bill Lovell, Tony Parker, Quentin White.

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $250 required by 28 U.S.C. § 1914(a). The in forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an in forma pauperis affidavit and a prison trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $250.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the

account since the last payment under this order, and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 262 Federal Building, 111 S. Highland, Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.     Analysis of Plaintiff's Claims

On March 3, 2005, Plaintiff Aaron filed this complaint suing former Tennessee Department of Correction Commissioner ("TDOC") Quentin White, NWCX Warden Tony Parker, Disciplinary Chairperson Sandra Cagle, Correctional Officer Joshua Ross, and

Disciplinary Board Members Paula Thomas and Bill Lovell. Aaron alleges that on January 24, 2004, he arrived at NWCX and was placed in cell N7-20 with Inmate Ralph Quinn. Plaintiff alleges that two known gang member inmates had occupied cell N7-20 until January 9, 2004.

On January 31, 2004, NWCX was placed on lockdown due to an inmate's being stabbed to death with a knife. On February 9, 2004, while the institution remained on lockdown, Defendant Ross searched plaintiff's cell and found a homemade knife. Plaintiff was immediately transferred to high security and charged with possession of a deadly weapon. His roommate, Quinn, was not charged with any offense and was transferred to another institution later that day.

Plaintiff alleges that his disciplinary hearing was continued twice without a reason given. After ten days confinement in high security, plaintiff was adjudged guilty of possession of a deadly weapon. Aaron contends Defendant Disciplinary Board Members Thomas and Lovell stated that they did not believe Aaron was guilty, that Defendant Chairperson Cagle told them policy dictated a guilty finding, and that he should appeal. Aaron appealed to the Defendant Warden and TDOC Commissioner, however, his conviction was upheld. Plaintiff alleges that he filed an untimely writ of certiorari in Lake County Chancery Court which was denied on February 11, 2005.

Aaron seeks a declaratory judgment which deems the evidence used to support his disciplinary conviction unreliable and Cagle's instruction that policy dictated a guilty finding arbitrary and illegal. Aaron also contends that his right to equal protection was violated by

4

defendants' failure to charge his roommate with an offense and his right to due process was violated by the cumulative actions of defendants.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); Lavista v. Beeler, 195 F.3d 254 (6th Cir. 1999) (exhaustion requirement applies to claim alleging denial of medical care). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000).

> In order to comply with the mandates of 42 U.S.C. § 1997e(a),
>
> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Knuckles El, 215 F.3d at 642; see also Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002)(prisoner who fails to adequately allege exhaustion may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001)(no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies prior to filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).

This complaint contains multiple issues regarding plaintiff's right to due process and equal protection. Plaintiff was required to file a grievance for each incident which detailed the incident and named the party involved. The plaintiff has not submitted copies of his appeals or grievances to demonstrate that these individual defendants were named, as required by Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her); Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003); and Curry, 249 F.3d at 504. Accordingly, the plaintiff has not satisfied his burden of demonstrating that he exhausted his administrative remedies with respect to his claims.

The Sixth Circuit recently stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed sua sponte." Baxter, 305 F.3d at 489. Accordingly, the complaint is subject to dismissal in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[1]

However, the Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)   seeks monetary relief from a defendant who is immune from such relief.

---

[1] As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d at 489.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

A prison inmate has no right not to be convicted of prison disciplinary offenses; only a right to due process if the conviction deprives him of a liberty interest recognized by federal law. See generally Wolfel v. McDonnell, 418 U.S. 539, 564-71 (1974)(defining scope of due process application to prison disciplinary hearings). In general,

> [a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

Montanye v. Haymes, 427 U.S. 236, 242 (1976).

As the Supreme Court explained in rejecting a due process challenge to a prison disciplinary conviction:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
>
> . . . .
>
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Thus, an inmate generally cannot maintain a due process claim based on his confinement in segregation, particularly where, as here, he apparently suffered no loss of good-time credit. See Harbin-Bey v. Rutter, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a security theat group and permanent restrictions

imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); Sarmiento v. Hemingway, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case."); Utley v. Campbell, 84 Fed. Appx. 627, 629 (6th Cir. Dec. 15, 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); Williams v. Wilkinson, 51 Fed. Appx. 553, 556-57 (6th Cir. Nov. 15, 2002), cert. denied, 539 U.S. 929 (2003); see also Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative segregation); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Bruggeman v. Paxton, No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001). Nothing in the complaint provides any basis for a conclusion that the conditions the plaintiff encountered in "high security" "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Conner, 515 U.S. at 484; see also id. at 487.[2]

To the extent that Aaron protests the TDOC policy which required the finding of guilty, procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. Hewitt v. Helms, 459 U.S. 460, 471 (1983). Cf. Harrill v. Blount County, TN, 55 F.3d 1123, 1125 (6th Cir. 1995)(state law cannot

---

[2] Moreover, as the plaintiff has no liberty interest in avoiding placement on "high security," he has no due process claim due to the defendants' failure to restore his previous security classification and return him to his previous housing assignment after his acquittal on the disciplinary charge.

8

create a federal constitutional right); Spruytte v. Walters, 753 F.2d 498, 508 (6th Cir. 1985)(violation of state law does not by itself constitute deprivation of due process).

Even if that were not the case, due process requires only that some evidence be introduced in support of the decision of a disciplinary board. Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 455-57 (1985); Humphreys v. Hemingway, 77 Fed. Appx. 788 (6th Cir. Sept. 15, 2003). As the decisions of the disciplinary board was were supported by the testimony of defendants Ross, the requirements of due process were satisfied.

With the exception of Officer Ross, Defendants' only participation in the events alleged in this complaint is through the disciplinary hearing and processing of his appeals. The denial of the appeal of a prisoner's grievance cannot in itself constitute sufficient personal involvement to state a claim of constitutional dimension. Simpson v. Overton, 79 Fed. Appx. 117, 2003 WL 22435653 (6th Cir. 2003); see also Martin v. Harvey, 14 Fed. Appx. 307, 2001 WL 669983, at *2 (6th Cir. 2001)("The denial of the grievance is not the same as the denial of a request to receive medical care."). Moreover, § 1983 liability may not be imposed against the defendants for "a mere failure to act" based upon information contained in the grievance. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996).

Aaron contends that Parker and White ratified the allegedly unconstitutional behavior by failing to investigate or take remedial measures following their review of Aaron's grievance or appeal. Although failure to investigate may give rise to § 1983 supervisory liability, see

Walker v. Norris, 917 F.2d 1449, 1457 (6th Cir. 1990) and Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in Walker and the analysis in its progeny indicate that evidence of the "failure to investigate" can only establish municipal liability. In Dyer v. Casey, 1995 WL 712765, at **2 (6th Cir. 1995), the Court stated that "the theory underlying [Marchese and Lucas (citations omitted)] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In Walker, the Sixth Circuit distinguished Marchese because the Court "imposed the broad investigative responsibilities outlines in Marchese upon the Sheriff in his official capacity." Walker, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate" stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

Young v. Ward, 1998 WL 384564 *1 (6th Cir. 1998). Plaintiff's claims against Parker and White are brought against them in their individual capacities,[3] therefore his claims based upon ratification or failure to take any remedial measure are without merit.

Finally, a prison inmate cannot

---

[3] On March 8, 2004, the Court dismissed any claims against the defendants in their official capacities. Furthermore, on April 7, 2004, Johnson filed a motion to amend his complaint and amended complaint which clarified that his claims were against the defendants in their individual capacities only.

make out a violation of his equal protection rights simply by showing that other inmates were treated differently. He would have to show that he was victimized because of some suspect classification, which is an essential element of an equal protection claim.

Newell v. Brown, 981 F.2d 880, 887 (6th Cir. 1992)(citation omitted).

It is incumbent on one asserting an equal protection claim to prove the existence of some purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). A plaintiff must establish that a government official intentionally discriminated against him because of his membership in a protected class, or because of his poverty, race, or some other unreasonable classification. See Henry v. Metropolitan Sewer Dist., 922 F. 2d 332, 341 (6th Cir. 1990); Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986). Plaintiff's equal protection claim that his roommate received more favorable treatment fails because his fails to establish his membership in a protected class.

The mere fact that on some occasions another inmate received favorable treatment does not elevate plaintiff's non-cognizable claim into a matter of constitutional concern. Without specific or concrete factual allegations of discrimination, plaintiff's equal protection claim is clearly frivolous. Gutierrez v. Lynch, 826 F.2d 1524, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a claim."

Accordingly, the Court DISMISSES the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

III.	Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would be frivolous.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[4] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff

---

[4] Effective April 9, 2006, the fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and § 1915(b).

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE